**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

LEANN SPENCER,

          Plaintiff,

v.                                CIVIL ACTION NO.  2:25-cv-00569

MOUNTAIN COVE, INC., et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Defendants' Motion for Judgment on the Pleadings. [ECF No. 14]. Plaintiff Leann Spencer signed a waiver of liability before attending a water park owned and operated by Defendants Mountain Cove, Inc. and American-Canadian Expeditions, Ltd. ("Defendants"). At some point, she jumped onto the "blob," an inflatable attraction, and suffered injuries to both of her ankles. To recover for her injuries, she sued Defendants. Because Defendants cannot escape liability through agreement when state regulations set a standard of care, the waiver is unenforceable. Accordingly, Defendants' Motion for Judgment on the Pleadings, **[ECF No. 14]**, is **DENIED.**

## I.    BACKGROUND

This case arises from an injury at a water park. Taking the Complaint as true, as the court must at this stage, Plaintiff visited the ACE Adventure Waterpark ("the Water Park") with her family on June 12, 2024. [ECF No. 1, ¶¶ 8, 16]. Defendants, two business entities, own and operate

the Water Park. *Id.* ¶¶ 2–3. To engage with the attractions at the Water Park, Plaintiff signed a waiver that morning. [ECF No. 7-1, at 3]. The waiver states, in pertinent part, that

> risks and dangers may arise from foreseeable or unforeseeable causes . . . Staff may give incomplete warnings or instructions. Decisions by . . . company staff are part of the inherent risk . . . of other activities such as those activities listed above in this agreement. In consideration of and as part payment for the right to participate in such [activities], I have and do hereby assume all of the above risks, and release, and will hold harmless, the above listed companies, their agents, employees, associates and associated companies, or any other person from any and all liability, actions, causes of action, debts, claims and demands of every kind and nature whatsoever which I now have or which may arise out of or in connection with my trip or participation in any of the base camp or related activity. . . . I HAVE READ THE ABOVE WAIVER AND RELEASE/CONTRACT AND BY SIGNING IT AGREE IT IS MY INTENTION TO EXEMPT AND RELIEVE THE ABOVE LISTED COMPANIES AND EMPLOYEES FROM LIABILITY FOR PERSONAL INJURY, PROPERTY DAMAGE OR WRONGFUL DEATH CAUSED BY NEGLIGENCE OR ANY OTHER CAUSE. I RECOGNIZE THAT I AM FREE NOT TO PARTICIPATE IN ANY ACTIVITIES.

[ECF No. 7-1, at 2] (Capitalization in original).

Plaintiff was instructed to wear a life jacket, but she received no other instructions about Water Park conduct. [ECF No. 1, ¶ 17]. Eventually, Plaintiff decided to jump on the "blob," a large, common water park inflatable, from the jumping platform approximately six feet above the attraction. *Id.* ¶¶ 19–20.[1]

A Water Park employee was present on the jumping platform but was "not providing directions to the patrons on how to use the blob." *Id.* ¶ 21. Instead, the employee was "carelessly talking with another person and just waving people in line on." *Id.* ¶ 21. No one instructed Plaintiff when or how to jump, so she did not know how to safely engage with the attraction. *Id.* ¶¶ 21–24.

---

[1] The attraction is designed for two patrons. [ECF No. 1, ¶ 11]. The first person is positioned on the far side, displacing the air toward the other end (near side) of the attraction. *Id.* The second person, here the Plaintiff, is the person who jumps on the near side or unoccupied part of the "blob." *Id.* When that second person lands, she displaces the air and launches the first person into the air. *Id.* Plaintiff's Complaint includes a picture of this attraction. *Id.* ¶ 10.

Because of principles of weight distribution, users should land on their back or side, not their feet. *Id.* ¶ 24. Safe use of the attraction also requires a second person to be positioned at the other end of the "blob" to displace the air toward the jumping patron. *Id.* ¶ 23. When Plaintiff jumped, however, she landed feet-first, and no second person was positioned on the opposite side of the inflatable. *Id.* ¶ 25. As a result, Plaintiff shattered her ankles and "instantly began screaming in pain." *Id.*

Plaintiff then fell into the water but remained afloat because of the life jacket. *Id.* ¶ 26. A park employee helped Plaintiff out of the water, and a physician patron attended to her until emergency medical services arrived. *Id.* ¶¶ 27–28. An ambulance transported Plaintiff to a hospital. *Id.* ¶ 29. Her injuries included "severe fractures and injuries to both of her ankles," for which she underwent "multiple surgeries and extensive rehabilitation therapy to be able to walk again." *Id.* ¶ 30.

On September 24, 2025, Plaintiff filed her Complaint in this court. [ECF No. 1]. Plaintiff makes two claims against Defendants. In Count One, Plaintiff alleges that Defendants are liable for "intentional, grossly negligent, and/or reckless" conduct. *Id.* ¶¶ 38, 42–44. Plaintiff asserts that Defendants had several duties to patrons, breached those duties, and caused Plaintiff's injuries. *Id.* ¶¶ 33–46. In Count Two, Plaintiff alleges that Defendants violated statutory and regulatory rules such that "prima facie negligence" is established. *Id.* ¶¶ 47–61.

Defendants now move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). [ECF No. 14]. In sum, Defendants argue that Plaintiff waived her right to sue for her injuries when she signed the waiver before engaging with the Water Park. [ECF No. 15]. Plaintiff opposes the motion and instead argues that Defendants cannot waive their duties when

regulations establish a standard of care owed to patrons. [ECF No. 17]. I agree with Plaintiff, and for the reasons that follow, the motion, [ECF No. 14], is denied.

## II.    LEGAL STANDARD

"[T]he Rule 12(c) judgment on the pleadings procedure is addressed to . . . dispos[e] of cases on the basis of the underlying merits of the parties' claims and defenses as they are revealed in the formal pleadings." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 (3d ed. 2004). A motion under 12(c) is useful when questions of law remain. *Id.*

> [A] Rule 12(c) motion is designed to provide a means of disposing of cases when the material facts are not in dispute . . . and a judgment on the merits can be achieved by focusing on the content of the competing pleadings, exhibits thereto, matters incorporated by reference in the pleadings, [and] whatever is central or integral to the claim for relief or defense . . . .

*Id.*

When ruling on a 12(c) motion, courts must consider the pleadings, documents attached to the pleadings, and any documents that are "integral to the complaint and authentic." *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013) (citation omitted). Additionally, district courts apply the Federal Rule of Civil Procedure 12(b)(6) standard when ruling on 12(c) motions. Wright & Miller, *supra*, § 1367; *see Exec. Risk Indem.*, *Inc. v. Charleston Area Med. Ctr., Inc.*, 681 F. Supp. 2d 694, 706 n.17 (S.D. W. Va. 2009) ("[T]he standards under Federal Rule of Civil Procedure 12(c) for a motion for judgment on the pleadings are identical to those applicable to a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss.").

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require 'detailed factual allegations,' but it demands more than

4

an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). To achieve facial plausibility, the plaintiff must plead facts allowing the court to draw the reasonable inference that the defendants are liable, moving the claims beyond the realm of mere possibility. *Id.* Simple "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555.

III.   DISCUSSION

Defendants move for judgment on the pleadings, arguing that Plaintiff waived any right to file claims for her injuries. [ECF No. 15, at 3]. Specifically, Defendants argue that (1) the waiver Plaintiff signed is valid and enforceable, (2) the scope of risks contemplated by the waiver encompass the allegations in the Complaint, and (3) the waiver was freely entered into by parties with equal bargaining power and does not violate public interests. *Id.* at 5–9.

In response, Plaintiff argues that she is not barred from bringing her claims because Defendants cannot waive statutory and regulatory safety regulations under the West Virginia Code. [ECF No. 17, at 7]. Additionally, Plaintiff asserts that she and Defendants are not parties of equal bargaining power because she was only presented with the waiver after she had purchased the tickets for admission to the water park, making the waiver unconscionable. *Id.* at 10–11. Lastly, Plaintiff asserts that she did not contemplate Defendants' noncompliance with relevant statutory and regulatory safety requirements when signing the waiver. *Id.* at 11–12.

In their reply, Defendants argue that administrative regulations that merely touch on safety do not void recreational waivers. [ECF No. 18, at 2–5]. Defendants also argue that the waiver fails to meet the high bar of unconscionability under West Virginia law. *Id.* at 6–8.

I find that the waiver is unenforceable.[2] Defendants are subject to state regulations designed to protect patrons like Plaintiff. In light of these regulatory protections, Plaintiff cannot waive her right to bring a claim against Defendants for their own negligence in violation of those regulations. I begin with the applicable law.

### 1. Applicable Law

In general, courts disfavor waivers of liability that release a party from being held accountable for its own negligence. *Krazek v. Mountain River Tours, Inc.*, 884 F.2d 163, 165 (4th Cir. 1989); *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 375 (4th Cir. 2012); *Lutz v. Turner Broad. Sys., Inc.*, 187 F. Supp. 3d 706, 712 (N.D. W. Va. 2016) (Keeley, J.). But the Supreme Court of Appeals of West Virginia ("SCAWV") will enforce a contractual waiver (also called an exculpatory agreement) when the "express agreement is freely and fairly made, between parties who are in an equal bargaining position, and there is no public interest with which the agreement interferes." *Murphy v. N. Am. River Runners, Inc.*, 186 W. Va. 310, 315, 412 S.E.2d 504, 509 (1991); *see also Ameriprise Fin., Inc. v. Vallandingham*, 918 S.E.2d 572, 580 (W. Va. Ct. App. 2025) (collecting cases of SCAWV enforcing contracts with release agreements).

In those cases, a plaintiff is barred from suing for her injuries. The SCAWV has held that "in the absence of an applicable safety statute, a plaintiff who *expressly* and, under the circumstances, *clearly* agrees to accept a risk of harm arising from the defendant's negligent or reckless conduct may not recover for such harm, unless the agreement is invalid as contrary to

---

[2] Accordingly, the court declines to address the bargaining power of the parties, the scope of the risks contemplated, or the unconscionability of the agreement.

public policy." *Murphy*, 186 W. Va. at 314–15 (emphasis in original) (citing *Restatement (Second) of Torts* § 496B (1963, 1964) (express assumption of risk)).

The SCAWV has not exhaustively defined the public policy grounds on which an agreement may be unenforceable. It has, however, provided two examples. First, an agreement may be unenforceable if "the clause exempts a party charged with a duty of public service from tort liability to a party to whom that duty is owed." *Id.* at 315 (citing *Restatement (Second) of Contracts* § 195(2)(b)–(c) (1979)). Second, a court may find an exculpatory clause unenforceable if "the injured party is similarly a member of a class which is protected against the class to which the party inflicting the harm belongs." *Id.*

The parties do not assert that the creation and operation of a water park is a public service. Instead, the parties dispute whether the second example applies. Under the second example, as illustrated by the SCAWV, I must first consider whether a statute or regulation[3] imposes a standard of care on Defendants meant to protect a class of individuals to which Plaintiff belongs. *Id.* at 313, Syl. Pt. 1 ("When a statute imposes a standard of conduct, a clause in an agreement purporting to

---

[3] In *Murphy*, the SCAWV contemplated a *statute* that imposed a standard of care. Syl Pt. 1, 186 W. Va. at 313 ("When a statute imposes a standard of conduct . . .."). In *Finch v. Inspectech, LLC*, the court expanded its holding on exculpatory clauses to legislative rules (state regulations) found in the West Virginia Code of State Rules. 229 W. Va. 147, 156, 727 S.E.2d 823, 832 (2012) (finding the standard of care for home inspectors was established by "guidelines regulating the home inspection industry for the protection of the consumers of such services"). The court recognized that expansion and held that

> for purposes of our public policy analysis in this case, a regulatory standard of conduct, which has been promulgated as a legislative rule in accordance with a specific legislative delegation of authority and direction to do so, fulfills the same goal of establishing a standard of conduct to protect a specified class of persons as does a statutory standard of conduct, which has been enacted as a statute in accordance with the legislative process for the enactment of statutes.

229 W. Va. at 156 n.5.

> Here, state regulations governing the "minimum requirements for the design, construction, management and operation of recreational water facilities" are found in West Virginia Code of State Rules § 64-16-1, et seq. The authority for promulgating Series 16 ("Recreational Water Facilities") is found in W. Va. Code §§ 16-1-4 ("Proposal of Rules by the Secretary"); 16-1-6 ("Commissioner of the Bureau for Public Health; powers and duties"); and 16-1-17 ("Penalties for interfering with examiners, inspectors or other authorized representatives of the commissioner in the performance of duty"). And the regulations of Series 16 apply to "the owners and operators of recreational water facilities." W. Va. Code R. § 64-16-1.6. Because of these regulations, properly promulgated by legislative delegation of authority, and the discussion of the standard of care that follows in *supra* III.2, I find that state regulations establish a standard of care like that considered in *Murphy* and *Finch*.

exempt a party from tort liability to a member of the protected class for the failure to conform to that statutory standard is unenforceable."); Syl. Pt. 2, *Finch v. Inspectech, LLC*, 229 W. Va. 147, 149, 727 S.E.2d 823, 825 (2012) (same).

If the court finds a statutory or regulatory standard of care exists, a defendant cannot contract away its tort liability when it fails to comply with the statutory or regulatory standard of care owed to the public. *Murphy*, 186 W. Va. at 315 ("Thus, a plaintiff's express agreement to assume the risk of a defendant's violation of a safety statute enacted for the purpose of protecting the public will not be enforced; the safety obligation created by the statute for such purpose is an obligation owed to the public at large and is not within the power of any private individual to waive."); *Finch*, 229 W. Va at 157 ("This standard of conduct renders unenforceable exculpatory clauses in home inspection contracts that purport to exempt home inspectors for their failure to comply with such conduct standards.").

### 2. Analysis

I find that state regulations impose upon Defendants a standard of care and that Plaintiff falls within the class of individuals those regulations are intended to protect. Accordingly, the exculpatory agreement is unenforceable as a matter of law, and Defendants' motion must be denied.

The West Virginia Code of State Rules "establishes the minimum requirements for the design, construction, management and operation of recreational water facilities." W. Va. Code R. § 64-16-1.1. Series 16 ("Recreational Water Facilities") applies "to the owners and operators of recreational water facilities." W. Va. Code R. § 64-16-1.6. Here, Defendants own and operate "a waterpark in Minden, Fayette County, West Virginia, known as ACE Adventure Waterpark and alternatively designated as Wonderland Waterpark." [ECF No. 1, ¶ 8]. The Water Park is

appropriately considered a "recreational water facility," and Defendants are "operators" as defined by regulation.[4]

The recreational water facility regulations, at least in part, protect patrons—the class of individuals to which Plaintiff belongs.[5] A state official may order the immediate closure of a facility if a condition "endangers the life, health or safety of the patrons or employees." W. Va. Code R. § 64-16-5.4.a. Water quality is governed by regulation, as well as the methods for cleaning, disinfecting, and testing water. W. Va. Code R. §§ 64-16-7 and 64-16-8. *See also* W. Va. Code R. § 64-16-11 (governing the routine maintenance and operation of a facility to keep it clean, "remove visible debris," maintain water "free of visible scum and floating matter," and drain "as necessary for inspection, cleaning, or repair"). Patron conduct is also regulated, and "rules applicable to patron behavior" must be prominently posted "so as to be readily visible to the patrons." W. Va. Code. R. § 64-16-9.4. In response to any conduct that may endanger safety, the Water Park operator is empowered to "[e]xclude from the premises any patron who does not follow the safety and sanitation rules." W. Va. Code. R. § 64-16-9.2.a.

Critical to Plaintiff's claim, state regulations specifically require recreational water facilities and operators to follow certain safety requirements. W. Va. Code R. § 64-16-10. Each relates to the safety of patrons, the rescue of patrons, and the safe maintenance of equipment.

---

[4] An operator is defined as a "person responsible for the operation of a recreational water facility." W. Va. Code R. § 64-16-2.6. A person is an "individual, city, town, partnership, association, company, corporation, government agency, institution, apartment, motel, country club, camp, or any other legal entity." W. Va. Code R. § 64-16-2.9. And West Virginia Code of State Rules § 64-16-2.11a defines a recreational water facility as

> [a] body of water, under the control of a person, which has been modified, improved, constructed or installed for the purpose of public swimming or bathing. It includes, but is not limited to, bathing beaches; swimming, wading, and diving pools; water slides, spray pools, lazy rivers, and wave pools; spas, hot tubs, therapeutic pools, hydrotherapy pools, and whirlpools; facilities operated by communities, subdivisions, apartment complexes, condominiums, clubs, camps, schools, institutions, parks, mobile home parks, hotels, and similar recreational and public facilities. A recreational water facility does not include a private residential swimming pool as defined in this rule.

[5] Patron is defined as a "customer, client, or paying or non-paying guest at a recreational water facility." W. Va. Code R. § 64-16-2.7.

9

Lifesaving equipment, first aid kits, and rescue devices must be available for use. W. Va. Code. R. §§ 64-16-10.1, 10.3, 10.5. The facility must provide "certified lifeguards on duty at all times the facility is open," and the lifeguards shall be equipped and trained. W. Va. Code. R. §§ 64-16-10.7, 10.8.

Contrary to the Defendants' assertions, these regulations are more than "administrative regulations" that touch on safety. [ECF No. 18, at 3]. The recreational water facility regulations, rather, require adequate signage, the maintenance of safe equipment, the assurance of clean water, and the employment of lifeguards who are well-equipped and trained to respond to patron safety incidents. This is more than administrative box-checking or procedural requirements.

As outlined, the state regulations create a standard of care that prioritizes the safety of patrons—this is the public policy in conflict with Defendants' exculpatory agreement. *Murphy*, 186 W. Va. at 315 (An exculpatory clause is "unenforceable on grounds of public policy if" the plaintiff is "similarly a member of a class which is protected against the class to which [Defendants belong]."); *Fincher*, 229 W. Va. at 157. Finding that the state regulations create a standard of care, Defendants cannot contract away that duty, nor can they use a waiver of liability to shield themselves from suit. Syl. Pt. 1, *Murphy*, 186 W. Va. at 313 ("When a [regulation] imposes a standard of conduct, a clause in an agreement purporting to exempt a party from tort liability to a member of the protected class for the failure to conform to that [regulatory] standard is unenforceable.").

Defendants disagree and point to *Lutz v. Turner Broadcasting System, Inc.*, a non-binding case in the Northern District of West Virginia. [ECF No. 18, at 4]; 187 F. Supp. 3d 706 (N.D. W. Va. 2016) (Keeley, J.). In *Lutz*, the plaintiff, who had signed a waiver of liability, sued after she slid down an inflatable slide and suffered multiple injuries. *Lutz*, 187 F. Supp. 3d at 708–10. On

10

summary judgment, the court reviewed applicable West Virginia law on exculpatory agreements and held that the plaintiff had waived her right to sue for her injuries. *Id.* at 714.

Defendants' reliance on *Lutz* is misplaced. Judge Keeley's analysis was limited to the parties' arguments: (1) whether the plaintiff had time "to adequately read and understand" the waiver such that it would be unenforceable against her and (2) whether the waiver contemplated "the inherent dangers . . . foreseen [or] contemplated" by the plaintiff before she engaged with the activity. *Id.* at 713–14. The court, however, did not analyze whether the waiver was unenforceable as in "conflict with an applicable safety statute." *Id.* at 712 (citing *Murphy*, 186 W. Va. at 412). Here the opposite is true: the parties disagree over the waiver's enforceability, and it is the only issue the court considers.

But *Lutz* also reinforces Plaintiff's argument that Defendants cannot waive their duties under the law. Judge Keeley specifically noted that West Virginia courts will not enforce exculpatory agreements when they conflict with safety statutes that "establish codes of conduct and applicable standards of care for particular industries and activities." *Id.* at 712 n.1. The court did not reach the issue, though, because the parties did not assert nor could the court find any applicable safety statute.[6] *Id.*

In this case, there are safety regulations that govern water recreational facilities, impose a standard of care on operators like Defendants, and protect patrons, a class of individuals to which Plaintiff belongs. All of this, Plaintiff alleges. [ECF No. 1, ¶¶ 8–10, 15, 17, 21–25, 47–61].

---

[6] This makes sense and further distinguishes *Lutz* from the instant matter. The recreational activity in *Lutz* was born out of a temporary promotional event featuring a "two-story, inflatable house-like structure (the "Funhouse") that was set up near the local mall. *Lutz*, 187 F. Supp. 3d at 708. It seems unlikely that West Virginia statutes or regulations would establish a specific standard of care for such roving and momentary recreational activities. For the same reason, Defendants' flood-gates argument that all exculpatory agreements will be held unenforceable fails. *Lutz* is a clear example that when there are no statutory or regulatory standards of care, an exculpatory agreement is likely to be enforced. The Water Park, in this case, is different. Its location is permanent (as it is necessarily connected to a body of water), and it is specifically regulated by state rules. [ECF No. 1, ¶ 10]. Further, Plaintiff specifically alleges regulatory violations in her Complaint. *Id.* ¶¶ 8–10, 15, 17, 21–25, 47–61.

Specifically, Plaintiff alleges that Defendants failed to adequately supervise (including providing instruction to) her, and because of that, she did not know how to safely and properly use the Water Park attractions, in violation of W. Va. Code R. § 64-16-9.3 (operator supervision of patrons). [ECF No. 1, ¶ 57.a]. Nor could Plaintiff receive instruction from any signage because Defendants failed to post signage about engaging with the attractions, in violation of W. Va. Code R. § 64-16-9.4 (water park rule signage). *Id.* ¶¶ 15, 38, 39, 55, 57.a. Plaintiff further alleges that Defendants failed to properly maintain the attractions with safe and proper inflation, resulting in her injuries, in violation of W. Va. Code R. § 64-16-10.4 (maintenance of equipment). *Id.* ¶ 57.b. And because of these dangers, Plaintiff asserts that Defendants should have closed "those parts of the recreational water facility that posed a danger" to patrons. *Id.* ¶ 57.c. Instead, those attractions remained open, in violation of W. Va. Code R. § 64-16-5.4a.

In this case, the regulations set a standard of care owed by Defendants to patrons like Plaintiff. Defendants cannot escape liability when they fail to meet that standard of care. Here, Plaintiff has adequately alleged a regulatory scheme, Defendant's negligence, and her own injuries. Therefore, this case will not be dismissed. I find that the exculpatory agreement in this case is unenforceable. The agreement alone does not prevent Plaintiff from bringing a claim against Defendants. The motion, [ECF No. 14], is **DENIED**.

## IV.    CONCLUSION

Because the exculpatory agreement between Plaintiff and Defendants is in conflict with West Virginia regulations that govern the standard of care owed to patrons at recreational water facilities, the agreement is unenforceable. Plaintiff may sue Defendants for her injuries sustained at their water park. Defendants' Motion for Judgment on the Pleadings, **[ECF No. 14]**, is **DENIED**.

12

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER:      April 15, 2026

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

13